WALLACE 




TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00735-CV







B. W., Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 95-00696, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 The Texas Department of Protective and Regulatory Services ("the
Department") filed a petition to terminate B.W.'s parental rights to her daughter K.W. The
trial court determined that B.W. engaged in conduct which endangered her child's physical or
emotional well-being and that termination was in the best interest of the child. See Act of May
23, 1989, 71st Leg., R.S., ch. 808, § 1, 1989 Tex. Gen. Laws 3673, 3673-74 (formerly Texas
Fam. Code Ann. §§ 15.02(1)(D)&(E), (2), since repealed and codified as section
161.001(1)(D)&(E), (2) of the Family Code). B.W. brings seven points of error, alleging that
the evidence is legally and factually insufficient to support the statutory grounds for
termination. She further complains that the termination of a parent-child relationship under
section 161.001(1)(M) based on the termination of parental rights to other children is a denial
of due process under the Fourteenth Amendment to the United States Constitution and under
Article I, section 19 of the Texas Constitution. U.S. Const. amend. XIV; Tex. Const. art. I, §
19. We will affirm the trial court's order.



STANDARD OF REVIEW


 B.W. contends that the evidence is legally and factually insufficient to meet the
clear and convincing standard of proof required to terminate her parental relationship. See In
re G. M., 596 S.W.2d 846, 847 (Tex. 1980). When both no-evidence and factual sufficiency
challenges are raised, we must first examine the legal sufficiency of the evidence. Glover v.
Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In deciding whether or not the
evidence is legally sufficient, this Court considers only the evidence and inferences tending to
support the findings and disregards all evidence and inferences to the contrary. D. O. v. Texas
Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex. App.--Austin 1993, no writ). In deciding
whether the evidence is factually sufficient, this Court considers and weighs all the evidence
and will set aside the order only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re
King's Estate, 244 S.W.2d 660, 661 (1951). The clear and convincing standard of proof
required to terminate parental rights does not alter the appellate standard of review. D.O.,
851 S.W.2d at 353.



CONDITIONS AND CONDUCT THAT ENDANGERED THE CHILD


 In her first four points of error, B.W. complains that there is no evidence or
factually insufficient evidence that she placed or allowed K.W. to remain in conditions which
endangered the child's physical or emotional well-being or that her conduct endangered
K.W.'s physical or emotional well-being. We will discuss all four points of error together as
we review the evidence to determine if it is legally and factually sufficient to uphold the trial
court's findings.

 In 1979, B.W. began a relationship with Gus Frithiof, the father of her first
four children. During the course of their relationship, Frithiof drank heavily and abused B.W.
physically, mentally, and emotionally. B.W. testified that she questioned whether Frithiof
might be sexually assaulting his own daughters. Following allegations of child abuse against
B.W. and her husband, the Department became involved with B.W. in 1984. The Department
established various treatment goals and objectives to address the problems of abuse and to
improve her ability to be an effective parent. To accentuate the dangers of her physically
abusive relationship, the Department conditioned B.W.'s retaining custody of her four children
on her agreement to stay away from Frithiof. Placing her desires above the safety and welfare
of her children, B.W. reneged on that agreement and reunited with her abuser. Her four
children were eventually removed because of abuse and neglect, and B.W. ultimately
relinquished her parental rights to those children.

 Following her relationship with Frithiof, B.W. began a relationship with a man
she described as a drug user and dealer who also physically abused her. After that, B.W.
became involved with K.W.'s father, Don Gautier; K.W. was born in 1991. Gautier
physically abused B.W. and K.W. He was eventually jailed for assaulting B.W. On one
occasion, Gautier became angry and stomped on K.W. After checking the child, B.W.
thought nothing was wrong, but a doctor recommended that K.W. be taken to the emergency
room for treatment. Following her relationship with Gautier, B.W. married her current
husband, Roy Hernandez. B.W. testified at trial that he has a drinking problem and becomes
violent. While the Department has attempted to provide counseling and direction to help B.W.
stay away from abusive relationships, B.W. has chosen to ignore this help and remain in
situations that are dangerous to herself and her child.

 In addition to subjecting her to a consistent pattern of family violence, B.W.
neglected K.W. in several specific instances. In August of 1993, B.W. was arrested for
prostitution. The officer testified that B.W. appeared to be intoxicated and insisted that her
child was at a local motel commonly used for prostitution. After knocking on the doors of
over half of the rooms at the motel, the police were unable to find K.W.

 A month later, a police officer pulled over a van with a fictitious registration
some time after midnight. The officer found K.W. asleep in the back seat, unrestrained and
wearing a filthy diaper. The driver had needle marks on his arms and lied to police about his
identity. After searching for B.W. for an hour and a half, the police were called down the
street to an altercation involving her and another woman. The police officer who interviewed
B.W. said she was intoxicated. As a result of this incident she received another referral to the
Department. After an assessment, the Department again determined that she needed parenting
skills classes, substance abuse treatment, and services through the Center for Battered Women. 
The Department arranged for intensive out-patient substance abuse treatment for B.W. as well
as protective day services for K.W. B.W., denying she had a substance abuse problem,
refused to cooperate with the drug dependency treatment program.

 The incident which initiated the string of events that culminated in the filing of
this petition for termination of parental rights occurred on January 18, 1995. B.W. testified
that she and K.W. had been out driving with her husband, Roy Hernandez, when their vehicle
broke down. Seeking help, the family forced their way into a home near the stalled car. The
occupant of the home confronted the intruders with a shotgun but did not fire because he saw
K.W. in B.W.'s arms. A police officer responding to the homeowner's complaint described
B.W. as intoxicated: she had difficulty standing and seemed to be in a stupor. K.W. was
immediately taken into custody by Child Protective Services. A worker reported that K.W.
was dirty with matted hair and blackened teeth; one tooth was chipped. In spite of the child's
condition, she was returned to her mother, who was again offered services through the
Department.

 On May 13, 1995, a police officer was dispatched to investigate a disturbance
involving B.W., her husband, and Ronald Kee. When the police officer arrived at the home,
he noted that B.W. had been drinking. After learning of outstanding warrants for B.W., the
officer attempted to arrest her. As the officer approached B.W., she picked up K.W. in an
effort to avoid arrest. After B.W. was arrested, the officer attempted to locate K.W.'s next of
kin in order to place her in their custody. B.W. suggested leaving K.W. at Kee's residence
but later commented that Kee had allegedly attempted to molest K.W. Unable to locate a
suitable placement for K.W., the officer contacted Child Protective Services. When K.W. was
taken into custody and examined, she had head lice, numerous ant bites, scabies on her arms
and legs, bruises on both upper arms, walked with a limp, and had no underwear.

 In addition to placing K.W. in so many dangerous situations, B.W. has also had
numerous contacts with the criminal justice system. Since K.W.'s birth, B.W. has been cited
for driving while intoxicated and has been arrested twice for prostitution.

 B.W. contends that the situations we have described were not dangerous or
harmful and that there is no evidence linking her actions with any dangerous situation in which
K.W. was found. Her contentions are defeated by the overwhelming weight of the evidence
which indicates that B.W. did place K.W. in situations that were dangerous to a child. Based
on the record, we are persuaded that clear and convincing evidence exists that is both legally
and factually sufficient to support the trial court's findings that B.W. endangered her child by
her conduct and by knowingly placing her in situations that could not nurture her physical and
emotional well-being. The record is replete with evidence of conduct by B.W. that
endangered her child. Likewise, this record is full of instances when B.W.'s recurring neglect
endangered both her child's physical and emotional well-being. We overrule B.W.'s first four
points of error.



BEST INTEREST OF THE CHILD


 In her sixth and seventh points of error, B.W. attacks the trial court's finding that
termination of her parental rights would be in the best interest of the child. Considerations
relevant to determining the best interest of a child are: the desires of the child; her emotional and
physical needs, now and in the future; emotional and physical danger to the child, now and in the
future; the parental abilities of the individuals seeking custody; the programs available to assist
these individuals to promote the best interest of the child; the plans for the child and the stability
of the home; the acts or the omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse of the acts or omissions of the parent. 
Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).

 We have already reviewed the overwhelming evidence of B.W.'s poor parenting
skills and the danger they present to her child. Likewise the record reflects that she is unable or
unwilling to take advantage of the programs available to improve her parenting skills, can offer
the child no stability, and is incapable of promoting the child's best interest. The record is full
of evidence of B.W.'s dysfunctional relationships with violent men, dating back to 1984. Her
continuing problems with substance abuse are closely related to the instances of neglect and
conduct that endangered her child. Despite the Department's numerous attempts to intervene,
B.W. refuses to help herself. Even after the Department conditioned B.W. retaining custody of
her four older children on staying away from an abusive relationship, she could not comply. 
B.W. has consistently engaged in acts that endanger her life and the well-being of her child. 
Years of help provided by the Department have not effected any change in this behavior. Based
on the record, the trial court could have found that it was in the child's best interest to place her
in a safer environment than B.W. has been able to provide. The evidence is legally and factually
sufficient to support the trial court's finding that K.W.'s best interests are served by terminating
B.W.'s parental rights. We overrule points of error six and seven.



CONSTITUTIONAL CHALLENGE


 B.W. contends in her fifth point of error that Section 161.001(1)(M) of the Family
Code, which permits termination on the basis of a finding that a parent's rights to a prior child
have been terminated, is unconstitutional. However, this Court does not reach constitutional
issues if the matter can be resolved on another basis. Horton v. Horton, 625 S.W.2d 78, 79
(Tex.App.--Fort Worth 1981, writ ref'd n.r.e.). We are able to resolve this matter on the basis
of the sufficiency of the evidence supporting termination regarding only the conduct concerning
this child under section 161.001 (D) and (E). Therefore we do not reach the constitutional issues
presented. We overrule point of error five. 



CONCLUSION


 Finding no error, we affirm the trial court's order terminating B.W.'s parental
rights.



 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: July 17, 1996

Do Not Publish